## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

GILBERTO C. FARIAS MATOS,

       Plaintiff,

v.                                 Case No:   6:18-cv-1105-GAP-DCI

BUSINESS LAW GROUP, P.A. and
LM FUNDING, LLC,

       Defendants

_____

### MEMORANDUM OPINION AND ORDER

This matter is before the Court following a bench trial held on May 2, 2022.

Plaintiff Gilberto Farias Matos ("Matos") sued Defendants Business Law Group, P.A. ("BLG") and LM Funding, LLC ("LMF"), for violations of the Fair Debt Collection Practices Act (FDCPA) and the Florida Consumer Credit Protection Act (FCCPA).

In March 2016, Matos purchased a one-bedroom condo unit wherein he agreed to pay certain condominium assessments to Lexington Place Condominium Association, Inc. Matos contends that BLG and LMF attempted to collect the assessments in manners that violated the FDCPA and FCCPA. Among the many issues in this case, the parties dispute whether, at the time of purchase,

Matos intended to use the condo unit as a vacation home or as an investment rental property. The resolution of this issue determines whether the assessments on the condo unit are consumer debt within the scope of the FDCPA and FCCPA, or commercial debt that falls outside the statutory definition. The parties agreed to resolve this issue via a bench trial to determine whether the remaining issues should proceed to a jury. That trial took place on May 2, 2022. As stated in open court and outlined below, the Court finds that the assessments were a commercial debt not covered by the FDCPA and FCCPA, and judgment is due to be entered for Defendants.

"To recover under both the FDCPA and the FCCPA (a Florida state analogue to the federal FDCPA), a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'" *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 836–37 (11th Cir. 2010). Under the FDCPA and FCCPA, "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment."[1]

---

[1] The FCCPA definition of debt is identical to that of the FDCPA and is to be construed in the same manner. *Compare* 15 U.S.C. § 1692a(5) *with* Fla. Stat. § 559.55(6); *see also Oppenheim*, 627 F.3d at 839.

15 U.S.C. § 1692a(5) (emphasis added). Accordingly, plaintiffs can only bring FDCPA and FCCPA claims that pertain "to debts arising from *consumer* transactions." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (emphasis in original); *see also Lingo v. City of Albany Dep't of Cmty. & Econ. Dev.*, 195 F. App'x 891, 893–94 (11th Cir. 2006) (holding that FDCPA did not apply to a business loan).

The condominium assessments at issue in this case may qualify as debt under the act if they arose from a consumer transaction.[2] *See Agrelo v. Affinity Mgmt. Servs., LLC.*, 841 F.3d 944, 952 (11th Cir. 2016) (holding that homeowners' association fines assessed against a couple's home were the same as assessments and therefore qualified as debt under the FCCPA). To determine whether the assessments here are consumer debts, the Court must look at Matos's intent with respect to the condo unit at the time of purchase. *See, e.g., Hepsen v. J.C. Christensen*

---

[2] In his trial brief, Matos asks the Court to follow the reasoning outlined in *Smith v. Atlantic Springs Condominium Association, Inc.* The court in *Smith* determined that condominium assessments are, in essence, per se consumer debt because the fees are ultimately used for a household purpose. *Smith v. Atlantic Springs Condo. Ass'n, Inc.*, No. 0:15-cv-61155, 2015 WL 7428745, at *3 (S.D. Fla. Nov. 23, 2015). The Court finds the reasoning in *Smith* to be unpersuasive. *Smith* largely relied on dicta from the Seventh Circuit's decision in *Newman v. Boehm, Pearlstein & Bright, Ltd.*,119 F.3d 477 (7th Cir. 1997). Without citing to authority, the court in *Newman* simply stated that homeowners' assessments "themselves" satisfy the definition of debt under the FDCPA because they used to improve commonly owned living spaces. *Newman*, 119 F.3d at 481. This focus on the end use of the assessments fails to consider whether a particular transaction involved a consumer to begin with. Indeed, the *Newman* approach instead focuses on what the *creditor* intends to use the money for rather than the intent of the debtor. Although the FDCPA is to be construed broadly, it still must be applied to benefit *consumers*. *See Agrelo*, 841 F.3d at 950 (citing *Borwn v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 924 (11th Cir. 1997).

*& Assocs., Inc.*, No. 8:07-cv-1935, 2009 WL 3064865, at *3 (M.D. Fla. Sept. 22, 2009) ("In determining whether a debt is a consumer debt, it is necessary to look at the transaction as a whole, paying particular attention to the borrower's purpose in obtaining the credit.") (citing *Slenk v. Transworld Sys.*, 236 F.3d 1072, 1075 (9th Cir. 2001)); *Fischer v. Fed. Nat'l Mortg. Ass'n*, 302 F. Supp. 3d 1327, 1331 (S.D. Fla. 2018) (determining "that the relevant time [to determine if the FDCPA applies] is when the loan is made, not when collection is attempted") (quoting *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000) (brackets in original))

The debt at issue here—an obligation to pay condominium assessments for maintenance of the common area elements of the condominium—was incurred as part of the cash closing of condo unit 623 at Lexington Place condos on March 31, 2016. Matos first leased unit 623 on May 23, 2016 and has apparently leased that unit through the present day.[3] Matos testified that when he purchased unit 623, he intended to use it as a vacation home for himself and his family. He also testified that sometime between March 31st and May 23rd, he underwent marital and financial difficulties that caused him to abandon that plan and use the unit as an investment rental property.

---

[3] The parties submitted into evidence copies of four residential annual leases that span from May 2016 through January 2020. *See* Doc. 229-3.

The evidence pertaining to the six weeks between purchase and rental is unclear, filled with conflicting testimony, and ultimately fails to establish that Matos intended to do anything with this property other than rent it out.

To start, it is unclear when Matos visited Lexington Place or whether he ever saw his condo. Matos testified at trial that he personally attended the meeting where he closed on unit 623, but at his deposition on March 15, 2019 (Doc. 229-8), he stated that he was travelling in Canada and that his associate, Rodrigo Alves ("Alves"), completed that process for Matos with his power of attorney. Matos also testified at trial that he personally inspected unit 623 before he bought it. However, at his deposition he testified that he had never personally seen the unit and had only ever seen the building from the outside. And while Matos states that he had never lived in unit 623, Alves testified that Matos stayed there for over a month after closing, despite the fact that the unit was in bad shape and needed work done. Matos also testified that he had some furniture in storage that he never moved into his unit and that he eventually gave away. But Alves again contradicted him by testifying that Alves had personally moved that furniture into unit 623.

Matos's reason for abandoning the vacation home plan is also unclear. Matos testified at trial that one of the main reasons he decided to rent out unit 623 instead of use it as a vacation home was due to the financial difficulties he faced

from his divorce. But at his deposition he testified that he made a good living, that he liked to travel and had plenty of funds to enjoy life. To later say at trial that he was forced to rent out a paid off, relatively inexpensive unit with no major ongoing maintenance costs simply does not add up. Even if one accepts his reason, Matos failed to give a concrete time frame for this decision making. He testified that he was having marital difficulties from January 2016 through June 2016. He claimed that at some point during that period he physically separated from his spouse, and this was when he decided to abandon the vacation home plan. But when asked to specify when this occurred, Matos could not specify a date other than that it must have been between March 31st and May 23rd.

In sum, Matos has the burden to establish that he purchased his property for personal, family, or household purposes and his testimony in that regard is simply not credible. Virtually all the concrete evidence in this case points to the conclusion that Matos acquired unit 623 to use as a rental property for the production of income—exactly how Matos has used his property since May 23, 2016. Matos's testimony as to his original intent is undermined by his repeated contradictions and his vagueness. And Alves, his other main fact witness in this case, contradicted Matos's version of events at several points. There is simply no concrete, consistent, definitive evidence as to what happened between March 31st and May 23rd that would support Matos's claim.

Upon consideration of the evidence and argument submitted by the parties, and the extensive testimony given by Matos and his associate, Alves, the Court finds that Matos failed to establish by a preponderance of the evidence that, at the time of closing, he intended to use condo unit 623 for "personal, family, or household purposes." Instead, the evidence establishes that Matos intended to use the apartment as an investment rental property. Therefore, the associated obligation to pay condominium assessments was not for a consumer purpose. *See Nwaizuzu v. Dunlap Gardiner Attorneys at Law, LLP*, No. 1:17-CV-3850, 2019 WL 2323611, at *4 (N.D. Ga. Jan. 22, 2019) (finding that a mortgage incurred to purchase an investment rental property was not obtained for commercial purposes and was not debt under the FDCPA) *report and recommendation adopted by* 2019 WL 2323586 (N.D. Ga. Feb. 7, 2019).

Accordingly, the Clerk is directed to enter judgment for Defendants and close the case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 5, 2022.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party